UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Brian Evans,

Plaintiff,

FILED BY _cwc_ D.C.

JAN 0 5 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

v.

Hawaiian Electric Industries, Inc.;

Hawaiian Electric Company, Inc.,

Hawaiian Electric Utilities, Inc.,

Maui Land & Pineapple Company, Inc.

Defendants.

JURY TRIAL DEMANDED

Case Number_____

COMPLAINT

Plaintiff Brian Evans ("Plaintiff"), an individual Florida resident proceeding pro se, brings this

civil action against Defendants Hawaiian Electric Industries, Inc.; Hawaiian Electric Company,

Inc.; Hawaiian Electric Utilities, LLC; and Maui Land & Pineapple Company, Inc. (collectively,

"Defendants"), and alleges as follows:

I. NATURE OF THE ACTION

1

This is an individual civil action arising from Defendants' negligent, grossly negligent, reckless, and wrongful conduct that caused and substantially contributed to the August 2023 Maui wildfires—one of the most destructive wildfire disasters in modern United States history.

In the days leading up to August 8, 2023, Maui experienced severe drought conditions combined with sustained and extreme wind events that were publicly forecast and widely reported. Under such conditions, energized overhead electrical transmission and distribution lines pose a well-known and acute wildfire risk, particularly where infrastructure is aged and vegetation management is inadequate. Courts have long held that those who control inherently dangerous instrumentalities must exercise care commensurate with the risk. Rylands v. Fletcher, L.R. 3 H.L. 330 (1868); Restatement (Second) of Torts §§ 519–520. These principles apply here because Defendants controlled energized electrical systems during conditions known to dramatically magnify catastrophic fire risk.

Defendants owned, operated, maintained, controlled, and oversaw electrical transmission and distribution infrastructure located in areas later devastated by the fires. Despite advance notice of extreme wind conditions and foreseeable wildfire danger, Defendants failed to de-energize power lines, failed to adequately maintain aging electrical infrastructure, and failed to properly manage vegetation in proximity to energized lines. Courts have repeatedly held utilities liable where similar failures foreseeably led to wildfire ignition. Barham v. S. Cal. Edison Co., 74 Cal. App. 4th 744 (1999); Anderson v. PG&E Corp., 306 F.3d 596 (9th Cir. 2002). These authorities apply because Defendants' omissions mirror the utility failures held actionable in those cases.

On or about August 8, 2023, multiple fast-moving fires ignited on Maui and spread rapidly under extreme winds. Historic communities, including Lahaina, were engulfed within minutes. Roads

2

became impassable, communications systems failed, and emergency warnings were delayed, incomplete, or absent. Residents and visitors were forced to flee through smoke-filled streets amid advancing flames, extreme heat, and falling debris.

Plaintiff was physically present on Maui at the time of the fires and was forced to physically run for his life to escape advancing flames and smoke. This was not an orderly evacuation. Plaintiff reasonably believed death was imminent. Visibility was severely impaired, escape routes were blocked or nonexistent, and the fire was advancing faster than available means of escape. Plaintiff's flight was a matter of immediate survival, not choice or convenience.

Courts recognize that being forced to flee on foot from an advancing deadly hazard constitutes exposure to imminent peril sufficient to support claims for severe emotional distress and trauma. Champion v. Gray, 478 So. 2d 17 (Fla. 1985); Metro-North Commuter R.R. Co. v. Buckley, 521 U.S. 424 (1997). These principles apply because Plaintiff was directly and immediately threatened by the wildfire and narrowly escaped death.

As a direct and proximate result of this life-threatening event, Plaintiff later received a medical diagnosis of Post-Traumatic Stress Disorder ("PTSD"), a serious and compensable injury. Molzof v. United States, 502 U.S. 301 (1992). Plaintiff's PTSD stems from a concrete, lived experience of imminent mortality, not generalized fear.

The Maui wildfires destroyed homes, businesses, cultural landmarks, and essential infrastructure, rendering large portions of Maui unsafe, inaccessible, and economically nonviable for extended periods. Courts recognize that when a defendant's conduct destroys the viability of a business environment, resulting economic losses are recoverable. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555 (1931).

3

Plaintiff is a nationally recognized concert producer and founder of the Maui Celebrity Series, a long-standing cultural and economic enterprise dependent on Maui's safety and accessibility. Plaintiff's contributions were formally recognized through four official gubernatorial commendations issued by four consecutive Governors of the State of Hawaii, underscoring the legitimacy and established nature of Plaintiff's business.

The wildfires destroyed the foundation of Plaintiff's business. Venues were destroyed or rendered unusable, tourism collapsed, contracts were canceled, and future opportunities tied to Maui were permanently lost. Plaintiff can no longer safely or practically return to Maui to resume concert production.

Plaintiff brings this action individually to recover for personal injuries, severe emotional distress, PTSD, economic losses, destruction of business expectancy, and long-term impairment of earning capacity. Plaintiff seeks damages exceeding $20,000,000.

—

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is a citizen of Florida. Defendants are citizens of states other than Florida. The amount in controversy exceeds $75,000 and, in fact, exceeds $20,000,000. Jurisdiction exists unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283 (1938).

This Court has specific personal jurisdiction because Defendants committed tortious acts outside Florida that caused foreseeable, substantial, and continuing injury within Florida, where Plaintiff

resides and continues to suffer harm. Calder v. Jones, 465 U.S. 783 (1984). This doctrine applies because Plaintiff's PTSD and economic losses are suffered in Florida.

The Eleventh Circuit recognizes personal jurisdiction where defendants cause continuing emotional or economic injury in the forum state. Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008); Posner v. Essex Ins. Co., 178 F.3d 1209 (11th Cir. 1999).

Plaintiff's PTSD diagnosis and ongoing treatment in Florida constitute a continuing tort. Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984). Florida's long-arm statute is satisfied. Fla. Stat. § 48.193(1)(a)(2).

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the injuries— medical diagnosis, economic loss, and continuing harm—occurred in this District.

On or about November 14, 2025, Defendant Hawaiian Electric Company, through its Claims Department, sent written correspondence directly to Plaintiff at his Florida residence acknowledging receipt of Plaintiff's individual wildfire claim, assigning a unique claim number, and advising that the claim was under investigation. This purposeful, claim-related communication into Florida arises from the same operative facts at issue in this action and supports the exercise of specific personal jurisdiction where Plaintiff resides and continues to suffer damages.

## III. JUDICIALLY NOTICEABLE FACTS REGARDING THE MAUI WILDFIRES

The Court may take judicial notice of facts not subject to reasonable dispute pursuant to Federal Rule of Evidence 201.

On or about August 8, 2023, Maui experienced extreme wind conditions and severe drought, during which multiple fires ignited and spread rapidly across the island, including Lahaina.

The fires resulted in mass evacuations, extensive destruction of property and infrastructure, and significant loss of life. Governmental statements and public reports acknowledged that extreme winds and rapid fire spread overwhelmed evacuation routes and emergency response capabilities.

Courts routinely take judicial notice of widely reported natural disasters and governmental acknowledgments thereof. In re Katrina Canal Breaches Litig., 495 F.3d 191 (5th Cir. 2007). This applies because the Maui wildfires are matters of public record and undisputed fact.

—

## IV. CLASS ACTION STATUS AND RIGHT TO PROCEED INDIVIDUALLY

Plaintiff is not bound by any class action settlement, recall, or release. Due process forbids binding an individual absent adequate representation and notice. Hansberry v. Lee, 311 U.S. 32 (1940); Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985).

Plaintiff was informed that although his name appeared administratively in a class proceeding, he did not qualify for individual representation. Counsel disclaimed representation, Plaintiff corrected the record in writing, and class counsel did not respond.

Silence in the face of notice constitutes waiver and estoppel. New Hampshire v. Maine, 532 U.S. 742 (2001). A non-party cannot be bound absent a full and fair opportunity to litigate. Taylor v. Sturgell, 553 U.S. 880 (2008); Smith v. Bayer Corp., 564 U.S. 299 (2011).

Prior to filing this action, Plaintiff submitted an individual written claim and demand to Defendant Hawaiian Electric Company arising out of the August 8, 2023 Maui wildfires.

Defendant acknowledged receipt of Plaintiff's claim in writing, assigned Plaintiff a unique claim number, and advised that the claim was under investigation. At no time did Defendant advise Plaintiff that his claim was subject to any class action, that he was represented by counsel, or that he was required to pursue relief through any collective, representative, or class-based proceeding.

Plaintiff did not knowingly opt into any class action arising from the Maui wildfires. When Plaintiff was informed that his name had been administratively associated with class proceedings, class counsel advised Plaintiff in writing that he did not qualify for participation because they believed he was independently represented by counsel. Thereafter, the attorney identified as Plaintiff's purported independent counsel advised class counsel in writing that he did not represent Plaintiff in connection with the Maui wildfires and provided confirmation to Plaintiff of that communication. Despite receipt of those communications, class counsel subsequently advised Plaintiff that they had on file that Plaintiff was represented by counsel, without addressing the written clarification that no such representation existed. Plaintiff then advised class counsel that he would proceed on his claims individually. Neither class counsel nor counsel for Defendants Hawaiian Electric Company or Hawaiian Electric Industries, Inc., who was copied on the correspondence, responded further or advised Plaintiff that he was bound by any class action, collective proceeding, or representative litigation.

—

## V. PARTIES

Plaintiff Brian Evans is a Florida resident and professional concert producer.

Defendant Hawaiian Electric Company, Inc. owned, operated, maintained, and controlled electrical transmission and distribution infrastructure on Maui.

Defendant Hawaiian Electric Industries, Inc. exercised ownership, control, oversight, and financial governance over Hawaiian Electric Company, Inc., including wildfire-related policies, rendering it liable under principles of control and agency. United States v. Bestfoods, 524 U.S. 51 (1998).

Defendant Hawaiian Electric Utilities, LLC is a Hawaii limited liability company and an operating subsidiary within the Hawaiian Electric enterprise responsible for electric utility operations and infrastructure relevant to the Maui wildfire events described herein.

Defendant Maui Land & Pineapple Company, Inc. is a Hawaii corporation that owns, controls, and/or manages substantial tracts of land in West Maui, including land containing unmanaged vegetation and invasive grasses that contributed to the spread, intensity, and severity of the August 8, 2023 Maui wildfires.

---

## VI. COUNT I – NEGLIGENCE

### (Against All Defendants)

Defendants owed Plaintiff a duty of reasonable care in the ownership, operation, inspection, maintenance, and control of electrical infrastructure in wildfire-prone conditions. Utilities owe a duty to take reasonable precautions against foreseeable fire risk. McCain v. Fla. Power Corp., 593 So. 2d 500 (Fla. 1992). This duty applies because Defendants controlled energized lines during extreme conditions.

Defendants breached that duty by failing to de-energize power lines despite advance notice of extreme winds, failing to maintain aging infrastructure, and failing to manage vegetation near energized lines. Such omissions constitute actionable breach. Barham v. S. Cal. Edison Co., 74 Cal. App. 4th 744 (1999).

These breaches created a foreseeable and unreasonable risk of catastrophic wildfire ignition and spread. Foreseeability exists where harm is within the scope of the risk created. Gibson v. Avis Rent-A-Car Sys., Inc., 386 So. 2d 520 (Fla. 1980).

Defendants' negligence was the actual and proximate cause of Plaintiff being forced to run for his life, suffering severe emotional distress, developing PTSD, and losing his livelihood. Proximate cause exists where harm flows directly from the risk created. Palsgraf v. Long Island R.R. Co., 248 N.Y. 339 (1928).

Plaintiff's psychological and economic injuries were foreseeable results of Defendants' negligence. Molzof v. United States, 502 U.S. 301 (1992).

The causal chain between Defendants' conduct and Plaintiff's injuries was direct and unbroken.

Plaintiff has plausibly pled negligence sufficient to survive Rule 12(b)(6). Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

—

## VII. COUNT II – GROSS NEGLIGENCE

(Against All Defendants)

Defendants had actual and constructive knowledge of extreme wildfire risk associated with their infrastructure and operations during high-wind events. Public forecasts and industry warnings made the danger unmistakable.

Despite this knowledge, Defendants consciously disregarded the risk by failing to de-energize lines and failing to take readily available preventative measures.

Such conduct exceeds ordinary negligence and demonstrates reckless indifference to human life and safety. Farmer v. Brennan, 511 U.S. 825 (1994).

Defendants' grossly negligent conduct substantially contributed to the ignition and spread of the Maui wildfires.

Plaintiff's injuries, including being forced to run for his life and suffering PTSD, were foreseeable consequences of such reckless disregard.

Gross negligence supports punitive damages to punish and deter similar misconduct.

Plaintiff has adequately pled gross negligence under governing law.

—

## VIII. COUNT III – NEGLIGENCE PER SE

### (Against All Defendants)

Defendants owed Plaintiff a duty to operate, maintain, and manage their electrical infrastructure and land holdings in a manner consistent with applicable safety standards, wildfire mitigation practices, and industry norms designed to prevent foreseeable wildfire ignition and spread.

Defendants' violations of these standards constitute evidence of negligence and support Plaintiff's claims for relief.

Defendants were subject to statutes, regulations, and safety standards governing electrical utilities and wildfire prevention, enacted to protect the public from catastrophic fire risk.

Defendants violated applicable safety requirements by failing to maintain infrastructure, manage vegetation, and de-energize lines during dangerous conditions.

Plaintiff is within the class of persons these laws were intended to protect.

Plaintiff's injuries are of the type these laws were designed to prevent.

Violation of safety statutes constitutes negligence per se. Restatement (Second) of Torts § 286.

Defendants' statutory violations directly caused the Maui wildfires.

Those violations proximately caused Plaintiff's injuries and damages.

—

## IX. COUNT IV – STRICT LIABILITY

### (Ultrahazardous Activity)

### (Against All Defendants)

The operation of high-voltage electrical infrastructure in extreme wildfire conditions constitutes an ultrahazardous activity.

The risk of catastrophic harm cannot be eliminated through reasonable care.

Defendants engaged in this activity near populated communities and businesses.

The inherent danger was foreseeable and extreme.

Strict liability applies regardless of fault. Restatement (Second) of Torts §§ 519–520.

Plaintiff suffered severe personal, emotional, and economic harm as a direct result.

Strict liability ensures the cost of catastrophic harm is borne by those who created the risk.

—

## X. COUNT V – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

Defendants' conduct was outrageous and reckless, exceeding all bounds of decency.

Defendants knew or should have known their conduct would cause severe emotional distress to persons exposed to imminent wildfire danger.

Plaintiff was forced to run for his life under threat of death.

Plaintiff subsequently developed PTSD requiring ongoing medical treatment.

The emotional distress was severe, enduring, and debilitating.

Florida law permits recovery under such circumstances. Champion v. Gray, 478 So. 2d 17 (Fla. 1985).

Defendants' conduct was the proximate cause of Plaintiff's emotional injuries.

—

## XI. COUNT VI – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

### (Against All Defendants)

Plaintiff had valid business relationships and a reasonable expectancy of continued business operations on Maui.

Defendants knew or should have known that safe infrastructure was essential to Plaintiff's business.

Defendants' conduct destroyed Plaintiff's business expectancy by rendering Maui unsafe and commercially impracticable.

Contracts were canceled, opportunities were lost, and goodwill was destroyed.

Plaintiff's losses were substantial and permanent.

Defendants' interference was unjustified and wrongful.

Plaintiff suffered economic damages. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812 (Fla. 1994).

---

## XII. DAMAGES

Plaintiff seeks compensatory damages exceeding $5,000,000 for emotional distress, PTSD, economic loss, loss of earning capacity, and destruction of business expectancy.

Plaintiff seeks punitive damages due to Defendants' reckless and grossly negligent conduct.

---

## XIII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

—

## XIV. CONCLUSION

Defendants' conduct represents a profound failure to meet basic duties of care owed to the public and to Plaintiff. The Maui wildfires were not an unavoidable act of nature but the foreseeable result of ignored warnings and preventable failures. Plaintiff has alleged concrete facts demonstrating duty, breach, causation, and damages, supported by judicially noticeable events and controlling legal authority. Plaintiff was forced to run for his life and narrowly escaped death. The psychological and economic injuries that followed were natural and foreseeable consequences of Defendants' conduct. The Complaint provides Defendants with clear notice of the claims and grounds for relief. It satisfies Rule 8 and the plausibility standard under Twombly and Iqbal. Public policy favors adjudication on the merits where catastrophic harm is alleged. Defendants should be required to answer and produce evidence. A jury should determine responsibility and damages. Justice requires no less.

—

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants for compensatory damages, punitive damages, costs, interest, and such other relief as the Court deems just and proper.

Brian Evans

2080 S. Ocean Drive – Apt. 1505

Hallandale Beach, FL 33009

(954) 214-3076

Email: belasvegas@yahoo.com

January 5th, 2026

## EXHIBIT A

Letter from Plaintiff's Psychiatrist confirming PTSD diagnosis while Plaintiff resided in Florida where diagnosis occurred.



**HERAMBA**
MENTAL HEALTHCARE
EMPOWERING THE MIND, MASTERING THE BODY

1314 Central Ave. S, Kent, WA 98032
Suite 203
Phone: 888 – 867 – 0204
Fax:    888 – 867 – 2165

July 2, 2025

To:
Nicholas George
Morgan & Morgan
2000 Town Center
Ste. 1900
Southfield, MI 48075

**RE: BRIAN EVANS DIAGNOSIS OF PTSD**

Dear Attorney George,

This letter shall serve as my diagnosis of Brian Evans. As the psychiatrist of Brian Evans, I have extensive

knowledge of what occurred on Maui during the Maui Wildfire. Due to the catastrophic experience which Brian

has convinced me did occur, I have diagnosed Mr. Evans with PTSD and believe he has suffered the condition

of PTSD as a direct result of the Maui Wildfires.


Should you have any questions or require further information, please feel free to contact our office **at Heramba**

**Mental Healthcare** at (888) 867-0204 or via email at info@herambamentalhc.com


Sincerely,

*tchidoyao*
**TCHIDO YAO, DNP, ARNP, PMHNP-BC**

# EXHIBIT B

## Example of Plaintiff's work in Lahaina

Maui Celebrity Series brings back funny man | News, Sports, Jobs ...    https://www.mauinews.com/zzold-categories/backstage/2018/03/ma...

# The Maui News

# Maui Celebrity Series brings back funny man

## Tom Arnold



Tom Arnold (left) and Brian Evans return with the Maui Celebrity Series at 8 p.m.
_____ aina. Tickets are $45 to $75 presale,
**1 article remaining...**     _____ eet tickets available online through
                               _____ ght of this event will be $70 at the
                               _____ www.thedirtymonkey.com. Photo

### Starting at $4.62/week.

**Subscribe Today**

Case 1:26-cv-20024-FAL   Document 1   Entered on FLSD Docket 01/05/2026   Page 20 of 35

Impresario, singer, actor, author and United States congressional candidate for Hawaii, Brian Evans started the Maui Celebrity Series nearly a decade ago in Lahaina. Over the years, Evans has presented such stars as Academy Award-winner Jeff Bridges; Emmy Award-winners Roseanne, William Shatner and Louie Anderson; and Grammy Award-winners Cheech and Chong, Bob Saget, Rob Schneider and David Spade.

The night before New Year's Eve 2016, Evans decided to conclude the series with a performance by Shatner at the Historic Iao Theater in Wailuku, but after a chance meeting with Tom Arnold at Shep Gordon's Wailea New Year's Eve gala this year, Evans tossed around the idea of bringing the series back. This Saturday night it returns with Golden Globe Award-winning actor and comedian Tom Arnold ("True Lies") and classic crooner Evans.

"It was Shep Gordon who first introduced me to Tom Arnold, and that show sold out back when the series began," shared Evans. "I keep telling myself, 'This is the last show,' but then I get the itch again. Tom and I are working on a TV series I've created called 'Creature,' so we figured it would be fun to do a show while he's here."

**1 article remaining...**

**Starting at $4.62/week.**

**Subscribe Today**

ᴏr if he had more in the works.

ɴᴏw that I will bring, and won't ɴ my life. I'm going to focus on life will be taking a different

That new direction is running for Congress. I asked why he is pursuing the office.

"I am running for Congress because we need to be a state that is recognized as one on a global scale — we're not. We're 'that tourist destination,' and there are people here who have a voice that is not a part of the national conversation," he explained.

A longtime advocate and fundraiser for healthcare issues, Evans shared his cause.

"I intend to focus on the fact that hospital medical errors and malpractice are now the third leading cause of death in the United States. This is not a Republican or Democrat issue — it's a human being issue. Win or lose, I'm going to make sure that the people of Hawaii are fed more than one liners that get candidates elected who then do nothing," he concluded.

I asked Arnold to comment on Evans' run for office.

"That's the show! I'm not even kidding on this one — that should be amazing. He's got his work cut out for him, but that's good TV and a show we should be working on together," he joked.

Arnold stated that he's not a political comedian, but shared that he has been friends with President Donald Trump for 30 years.

"I'll talk about him because I know him. We went to the Playboy Mansion together many times, and I wasn't the creepy dude."

Arnold calls Maui his "favorite place on the planet," and shared that he and his wife were married at Gordon's house.

**1 article remaining...**

's house on Maui than in

**Starting at $4.62/week.**

aui Theatre eight years ago and asked his reaction to "Tom

**Subscribe Today**

Case 1:26-cv-20024-FAL Document 1 Entered on FLSD Docket 01/05/2026 Page 22 of 35

"Right? That says it all, and it tells you how bad I want to come back to Maui. Maui is a different animal — The Dirty Monkey could be the best club in the world for all I know. I got a phone call at 3 a.m. from Brian and he says, 'Not to worry, but we're moving to The Dirty Monkey,' " said Arnold while laughing. "It's going to be perfect though, they've got a real stage. I need a mic and a light. It's going to be a fun night, and it will be just like a comedy club."

Arnold returned to his stand-up roots several years ago and has a new comedy special debuting on Hulu next month.

"I've always done stand-up since I was a student at the University of Iowa in 1982 performing at the student union. About eight years ago, I decided to do more. Now I'm 59 with two young kids, so I guess I'll be doing standup forever so I can put them through college," he said. "The only thing that ever made my dad laugh was watching the Bob Hope specials, so as a kid I said 'I want to do that.' Then my first big gig was appearing on a Bob Hope special — he even called my dad. I also did USO tours with him. So every dream I've ever had has been achieved. It's all downhill from here."

\*\*\*\*\*

Founded in 1994 by former Alvin Ailey American Dance Theater dancers Dwight Rhoden and Desmond Richardson, Complexions Contemporary Ballet has impressed audiences around the world with the singular approach of reinventing dance through a mix of methods, styles and cultures.

Now having presented that vision in over 20 countries, on five continents and to more than 20 million television viewers on "So You Think You Can

**1 article remaining...**

# Starting at $4.62/week.

**Subscribe Today**

the most recognized and poised to continue its mission of a time. Tonight's 7:30 n brand of athletic dance to the nter in Kahului where it will the music of Johann Sebastian

Case 1:26-cv-20024-EAL Document 1 Entered on FLSD Docket 01/05/2026 Page 23 of 35

Bach and the second, "Star Dust," a ballet tribute to the artistry of David Bowie, features nine of his most popular songs.

"Star Dust" premiered in Detroit in 2016, just six months after Bowie's death, and dance critics have been lavishing praise upon the piece ever since.

The Washington Post called it "One of the most exciting performances I've seen . . . less a rock ballet than a rock concert."

Billboard Magazine said "I've never seen more people smiling, or fighting the urge to break into dance, at a ballet."

Rhoden previously choreographed "Rise" to the music of U2; "Innervisions," as a tribute to Stevie Wonder; and "Strum," a ballet set to the songs of Metallica.

In a 2017 Newsweek feature just prior to "Star Dust's" New York debut, Rhoden called Bowie's music, "The sound of the time that I grew up in," and said he has been inspired by Bowie's multiplicities since adolescence.

In this highly athletic piece, the 16-member ensemble will combine Ziggy Stardust-like face and body paint and glam-rock costumes by costumier Christine Darch with daredevil dancing.

* Complexions Contemporary Ballet featuring "Star Dust: A Ballet Tribute to David Bowie." Performance is at 7:30 tonight in the Castle Theater at the MACC. General admission tickets range from $12 to $65 with half price for kids under 12 (plus applicable fees). For more information or to purchase tickets, go to the box office, call 242-7469, or visit www.maui arts.org.

**1 article remaining...**

**Starting at $4.62/week.**

**Subscribe Today**

Seabury Hall Academy presents
e Linares and Jennifer Rose.
d's performances of "Tartuffe"
p.m. Thursday through Saturday

Cases 1:26-cv-20024-EAL Document 1 Entered on FLSD Docket 01/05/2026 Page 24 of 35

and 3 p.m. Sunday at the 'A'ali'ikuhonua Creative Arts Center on the Seabury Hall campus in Makawao. Tickets are $20 for adults, $15 for students, payable by cash or check only and are available at the box office prior to show time.

*****

Although initially intended to be held over for this weekend, the ProArts Playhouse production of "The 39 Steps" has closed. There are no additional performances.

Opportunities

MAPA Live will be holding auditions for "Into the Woods," music and lyrics by Stephen Sondheim and book by James Lapine, directed by David C. Johnston, choreography by Andre Morissette and under the musical direction of Gary Leavitt.

All roles are available and auditions are open to performers ages 16 and older. Actors must schedule an audition appointment and prepare 32 bars of two musical theater songs (one selection must be from a Stephen Sondheim musical).

Actors must also bring sheet music in their key (or a recorded track), plus a current headshot and resume. An accompanist will be provided. Appointments are available between 6:30 and 9 p.m. April 11 and April 13, and from 1 to 4 p.m. April 15 at the MAPA Main Studios, 2027 Main St. in Wailuku. Audition callbacks will take place on April 22, and rehearsals will begin the last week of May.

Performances of "Into the Woods" will be weekends from Aug. 24 to Sept.

1 article remaining...                                racter descriptions and more

**Starting at $4.62/week.**

Subscribe Today

Email Address

I'm interested in (please check all that apply) *(Required)*

☐ Daily Newsletter                    ☐ Breaking News

☐ Obituaries

Are you a paying subscriber to the newspaper? *(Required)*

○ Yes      ○ No

SUBSCRIBE

**1 article remaining...**

# Starting at $4.62/week.

### Subscribe Today

# The Maui News

# Bob Saget and the emerging success of Maui Celebrity Series

Opening night of the relaunched Maui Celebrity Series at the Sheraton Maui Resort & Spa in Kaanapali was a resounding success last Sunday. Bob Saget's "Dirty Daddy" performance had the crowd laughing nonstop during his 90-minute set, and the event was extremely well-attended by mostly young Maui residents.

**2 articles remaining...**

## Starting at $4.62/week.

**Subscribe Today**

er who also serves as an opening
ck Lounge, which is open to the
ies performance.

Case 1:26-cv-20024-FAL Document 1 Entered on FLSD Docket 01/05/2026 Page 27 of 35

"It's not about competing with other Maui entertainment," said Evans, "it's about enhancing what is already here and bringing performers that are rarely seen live to Maui. It's really just about fun, not the money; these shows are barely going to pay for themselves. But the artists are excited to come to Maui, and I always love performing here."

Evans is a true crooner in the style of Frank Sinatra, and wowed the crowd on Sunday with his rousing rendition of "New York, New York." Evans performs regularly in Las Vegas, and because of sharing the stage with many performers, he is essentially bringing friends to Maui, and partnering with the Sheraton and Original New York Seltzer to do so.

Brian Hunnings, Sheraton Maui's executive assistant manager who coordinates the series with Evans, explained why he wants to bring entertainment to the West Maui venue. "It's all part of our revival. Sheraton Maui is the island's most iconic resort with 50-plus years of history."

In its beginnings, the Sheraton hosted Katherine Hepburn, Spencer Tracy, Rock Hudson, Elizabeth Taylor and Elvis.

"There isn't a lot of nightlife in Lahaina and Brian Evans' celebrity series is a perfect fit for us," Hunnings said.

Hunnings shared upcoming headliners and dates for the series, including Rob Schneider on Saturday, Nov. 28; William Shatner on Wednesday, Dec. 30; and Jon Lovitz on Saturday, Jan. 16, 2016. Also, Carrot Top will tentatively perform in the spring, and Evans hopes to bring John Cleese to Maui in the near future.

"We have great venues," said Hunnings, "ranging from the intimate 600 [...] ossibly having an outdoor event

**2 articles remaining...**

## Starting at $4.62/week.

Saget's exceptional crowd work. [...] nscripted. The tone of the entire [...] a private party and winged it. [...] enes stories from his best-

### Subscribe Today

Case 1:26-cv-20024-FAM Document 1 Entered on FLSD Docket 01/05/2026 Page 28 of 35

selling book, "Dirty Daddy," as well as a few songs and jokes from his previous comedy special, "That's What I'm Talking About," but he was at his best while talking with and teasing audience members Robert, Lex, Kumar and the nicknamed, "goat girl." All four hecklers became ongoing fodder, even finding their way into the song "Danny Tanner Is Not Gay," sung to the Backstreet Boys' "I Want It That Way."

Most of the crowd stayed late to meet Sagat for the inclusive afterparty, which included DJs and dancing. "These are not going to be your typical shows," said Hunnings. "It is intimate and one-on-one. The celebrities feel comfortable, and that is its appeal to audiences."

As was the case this weekend with Sinbad's Maui Comedy Festival performance at the Maui Arts & Cultural Center, future celebrity series events will find Shatner, Bill Maher, Jeff Ross and David Spade in performance the same week in December providing world-class comedy entertainment all over Maui.

* Original New York Seltzer presents The Maui Celebrity Series at the Sheraton Maui Resort & Spa in Kaanapali. For information on future performances, visit www.mauicelebrityseries.com. Tickets range from $75 to $150 and are available through www.honoluluboxoffice.com. The performances will contain adult content; suggested audience is 21 and older.

Upcoming

Seabury Hall Performing Arts presents the musical revue, "The World Goes 'Round: the Songs of Kander and Ebb," directed and choreographed by David Ward. The performance celebrates the songs of one of the longest and most successful songwriting teams in American musical

**2 articles remaining...**

abaret," "Chicago," "The Act,"

ı," and the films "Funny Lady"

**Starting at $4.62/week.**

k, New York" starring Liza

**Subscribe Today**

urday, Oct. 9 and 10, and 3 p.m.

Sunday, Oct. 11, at the campus' A'ali'ikuhonua Creative Arts Center in Makawao. Tickets are $12 for adults, $10 for seniors, and $5 for students. Call 573-1257 or visit www.seaburyhall.org.

Rick Scheideman returns to Maui with his "An Evening With Mark Twain" on Oct. 9. This masterful and intimate one-man show will be presented at the Pioneer Inn Courtyard at sundown.

* Performances are at 6:30 p.m. Fridays through Dec. 4. Tickets are $20 and may be reserved by calling (303) 507-0987 or purchased at the door.

## NEWSLETTER

Today's breaking news and more in your inbox

Email Address

I'm interested in (please check all that apply) *(Required)*

☐ Daily Newsletter      ☐ Breaking News

☐ Obituaries

Are you a paying subscriber to the newspaper? *(Required)*

◯ Yes    ◯ No

SUBSCRIBE

**2 articles remaining...**

## Starting at $4.62/week.

**Subscribe Today**





# EXHIBIT C

Governor Commendations to Plaintiff for his work in Lahaina (attached is three of the last four governors including the current, all of whom have issued Commendations to Plaintiff for his work there)



*A Special Message from*
*Governor Josh Green, M.D.*

In Recognition of

# Brian Evans

On behalf of the people of Hawaiʻi, it is my honor to recognize Brian Evans' commitment and dedication to Hawaiʻi's tourism industry and extend a warm [aloha?] sharing his artistic talents with our island community.

A multi-talented actor, singer, author and producer, Brian Evans created The Maui [Celebrity?] Series in 2010 with the vision to bring big name entertainers to Maui to attract [tourists to?] Hawaiʻi. He brought celebrities, including William Shatner, Jeff Bridges, [Don Rickles?] and Cheech & Chong to perform in venues on Maui, providing audiences [an?] unforgettable experience.

Brian Evans began his entertainment career, acting in Los Angeles, landing his first national television commercial at the age of 16. Several television roles followed. But it was his passion for music, in the "crooning" style and genre of Frank Sinatra, that [launched his?] singing career. His recording accomplishments include "At Fenway" "Creature at the [Bates?] Motel," which movie video was filmed at the famed movie-related and numerous others. He collaborated with artists and songwriters, [including?] ... Gibbons of ZZ Top, and [John?] Phillips. To honor his mother, he brought attention and awareness to a medical condition known as sleep apnea after she passed [away?] from this condition.

I extend my warmest aloha to Brian Evans for his contributions to our Maui ... state, and nation. Congratulations on ... which has [been?] ... into a graphic novel and will be presented at [Comic-Con?] ... in San Diego. I [wish you?] continued success in all your future endeavors. [Aloha?] ... grateful to have you ...





# Commendation

## presented to

# BRIAN EVANS

On behalf of the people of Hawaii, we wish to express our gratitude and thank you for your contributions to our state.

Mr. Evans is the creator and chief officer of the MusicCelebrity Records Rock Café. You established a venue which would coincide in some unique partner with a different setting and music for the city of Honolulu, Hawaii Chamber. Your work is particularly meaningful for continued efforts to...

We are proud that for more than 20 years we have supported the music and image industries. You have worked to create a new legacy for Hawaii our major level debut the capitol events.